Slip Op. 15-43

# UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| **DONGBU STEEL CO., LTD.,** | |
| **Plaintiff,** | |
| **and** | |
| **UNION STEEL MANUFACTURING CO., LTD.,** | |
| **Consolidated Plaintiff,** | Before: Claire R. Kelly, Judge |
| **v.** | Consol. Court No. 14-00098 |
| **UNITED STATES,** | |
| **Defendant,** | |
| **and** | |
| **NUCOR CORPORATION,** | |
| **Defendant-Intervenor.** | |

## OPINION AND ORDER

[Plaintiffs' motion for judgment on the agency record is granted.]

Dated: May 5, 2015

Brady Warfield Mills, Donald Bertrand Cameron, Julie Clark Mendoza, Rudi Will Planert, Mary Shannon Hodgins, and Sarah Suzanne Sprinkle, Morris, Manning & Martin, LLP, of Washington, D.C., for Plaintiff Dongbu Steel Co., Ltd. and Consolidated Plaintiff Union Steel Manufacturing Co., Ltd.

Loren Misha Preheim, Senior Trial Counsel, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, D.C., for Defendant.  With him on the brief were Joyce R. Branda, Acting Assistant Attorney General, Jeanne E. Davidson, Director, and Claudia Burke, Assistant Director.  Of counsel on the brief was Michael Thomas Gagain, Attorney, Office of the Chief Counsel for Trade Enforcement & Compliance, U.S. Department of Commerce, of Washington, D.C.

Timothy C. Brightbill, and Alan Hayden Price, Wiley Rein LLP, of Washington, D.C., for Defendant-Intervenor.

Kelly, Judge:  Plaintiff Dongbu Steel Co., Ltd. ("Dongbu") and Consolidated Plaintiff Union Steel Manufacturing Co., Ltd. ("Union Steel") (collectively "Plaintiffs") bring this action pursuant to 28 U.S.C. § 1581(c) (2012)[1] to challenge the United States Department of Commerce's ("Commerce" or "Defendant") final determination in Corrosion-Resistant Carbon Steel Flat Products From the Republic of Korea, 79 Fed. Reg. 17,503 (Dep't Commerce Mar. 28, 2014) (final results of antidumping duty administrative review; 2011–2012) ("Final Results") and accompanying Issues and Decision Memorandum for the Final Results of the Antidumping Duty Administrative Review: Certain Corrosion-Resistant Carbon Steel Flat Products from the Republic of Korea; 2011–2012, A-580-816, (Mar. 24, 2014), available at http://enforcement.trade.gov/frn/summary/korea-south/2014-06995-1.pdf (last visited Mar. 30, 2015) ("IDM").  Plaintiffs move, pursuant to USCIT Rule 56.2, for judgment on the agency record on their claim that Commerce's decision to disregard certain sales made below the cost of production was unsupported by substantial evidence and based on a legally erroneous interpretation of the cost recovery test in 19 U.S.C. § 1677b(b)(2)(D) (2012).[2]  Moreover, Plaintiffs argue that Commerce's use of costs incurred outside the period of review ("POR") was unlawful because Commerce does not have authority under the statute to use such costs. Defendant argues that Commerce's interpretation of 19 U.S.C. § 1677b(b)(2)(D) was

---

[1] Further citations to Title 28 of the U.S. Code are to the 2012 edition.

[2] Further citations to the Tariff Act of 1930, as amended, are to the relevant provisions of Title 19 of the U.S. Code, 2012 edition.

reasonable in light of the unusual circumstance of the review, and that Commerce reasonably used cost data for the five and a half months after the POR to calculate the cost of production under 19 U.S.C. § 1677b(b)(1).   The court finds that Commerce's interpretation of the cost recovery test was contrary to law.   Further, while the statute grants Commerce the discretion to calculate the cost of production for the below cost sales test using cost data outside the POR, Commerce has not adequately explained why its resort to such data in this case was reasonable.   Therefore the court grants Plaintiffs' motions for judgment on the agency record.

## BACKGROUND

This dispute arises from the operation of two distinct administrative proceedings performed in connection with the same antidumping and countervailing duty orders—an administrative review and a sunset review. Upon request, Commerce will conduct an administrative review at least once every 12 months. <u>See</u> 19 U.S.C. § 1675(a)(1)(A)–(B). Annual administrative reviews must be initiated by the last day of the month following the month in which the order was published (called the anniversary month), <u>see</u> 19 C.F.R. §§ 351.221(b)(1), (c)(1)(i), and normally have a POR that covers "entries, exports, or sales of the subject merchandise during the 12 months immediately preceding the most recent anniversary month." 19 C.F.R. § 351.213(e)(1)(i).

Commerce also conducts sunset reviews once every five years to determine whether revoking the order would lead to continued dumping (or subsidization) and material injury.  19 U.S.C. § 1675(c).  Sunset reviews are separate proceedings, distinct from the annual administrative reviews.  If either Commerce or the International Trade

Commission ("ITC") determines that an order should be revoked, then Commerce publishes notice of the revocation in the Federal Register. <u>See</u> 19 C.F.R. § 351.222(f)(2). However, the effective date for revocation is five years from the date of the order at issue if it is the first sunset review and five years from the date of any continuation order if it is a subsequent sunset review. <u>See</u> 19 C.F.R. § 351.222(i)(2).

In this case, Plaintiffs are foreign respondents that participated in the antidumping duty administrative review that led to the <u>Final Results</u> at issue. <u>See</u> <u>Final Results</u> at 17,503. The review was initiated on September 26, 2012, with a POR from August 1, 2011 through July 31, 2012.[3] <u>See</u> <u>Initiation of Antidumping and Countervailing Duty Administrative Reviews and Request for Revocation in Part</u>, 77 Fed. Reg. 59,168 (Dep't Commerce Sept. 26, 2012); IDM at cmt. 1. Separately, on March 11, 2013, the ITC published its final determination in the third sunset review on corrosion-resistant carbon steel flat products from Korea, revoking the antidumping and countervailing duty orders with an effective date of February 14, 2012. <u>Corrosion-Resistant Carbon Steel Flat Products From Germany and the Republic of Korea</u>, 78 Fed. Reg. 16,832, 16,833 (Dep't Commerce Mar. 19, 2013) (revocation of antidumping and countervailing duty orders) ("<u>Revocation Notice</u>"). <u>See also</u> <u>Corrosion-Resistant Carbon Steel Flat Products From</u>

---

[3] For this review, Commerce found reasonable grounds to believe certain sales of the foreign like product were made below the cost of production and therefore undertook a cost of production analysis. Decision Memorandum for the Preliminary Results of Certain Corrosion-Resistant Carbon Steel Flat Products from the Republic of Korea at 10, A-580-816, (Aug. 30, 2013), <u>available at</u> http://enforcement.trade.gov/frn/summary/korea-south/2013-21890-1.pdf (last visited Apr. 28, 2015).

Germany and Korea, 78 Fed. Reg. 15,376 (Int'l Trade Comm'n Mar. 11, 2013) (determinations).

On March 19, 2013, Commerce published notice that the antidumping order ("ADD Order") in this case would be revoked, but that Commerce would "complete any pending or requested administrative reviews of these orders covering entries prior to February 14, 2012." Revocation Notice at 16,833. In the Preliminary Results, issued on September 9, 2013, Commerce shortened the POR for the ongoing administrative review to reflect the effective date of revocation, resulting in a new POR from August 1, 2011 through February 14, 2012. See Corrosion-Resistant Carbon Steel Flat Products from the Republic of Korea, 78 Fed. Reg. 55,057, 55,058 (Dep't Commerce Sept. 9, 2013) (preliminary results of antidumping duty administrative review; 2011–2012) ("Preliminary Results").

In its normal value[4] determination for the review at issue here, Commerce only considered sales made during the revised POR from August 1, 2011 to February 14,

---

[4] In an administrative review of antidumping duties Commerce determines "(i) the normal value and export price (or constructed export price) of each entry of the subject merchandise, and (ii) the dumping margin for each such entry." 19 U.S.C. § 1675(a)(2)(A)(i)–(ii). Commerce calculates dumping margins by comparing the export price for each entry during the POR to a normal value reasonably corresponding to the same time frame. The statute states that "[t]he normal value of the subject merchandise shall be the price described in subparagraph (B), at a time reasonably corresponding to the time of the sale used to determine the export price or constructed export price under section 1677a(a) or (b) of this title." 19 U.S.C. § 1677b(a)(1)(A). See also 19 U.S.C. § 1677f-1(d)(2). The normal value may be the sales price in the home market, the sales price in a third country, or the constructed value. See 19 U.S.C. § 1677b(a)(1)(B), (4). Export price is "the price at which the subject merchandise is first sold (or agreed to be

(footnote continued)

2012.  See, e.g., Dongbu's CM Log Database, CD 109 (Sept. 4, 2013); Dongbu's Margin

Log Database, CD 111 (Sept. 4, 2013).  In conducting its cost of production analysis,

Commerce continued to use the costs provided by respondents for the original POR,

which reflected costs of production incurred from August 1, 2011 to July 31, 2012.  See

IDM at cmt. 1.  Therefore, the sales considered were limited to those within the shortened

POR, but the cost database included costs of production incurred after the POR.  See

Commerce's Antidumping Duty Questionnaire Sections A–E at section D, PD 24 (Nov.

19, 2012) (asking respondents to report the "actual costs incurred by your company

during the period of review" for the original POR prior to revocation).  In their case briefs

below, submitted on November 8, 2013, Plaintiffs argued Commerce had violated the cost

recovery test in 19 U.S.C. § 1677b(b)(2)(D) by testing Dongbu's home market sales for

the revised POR against the weighted average cost of production for the original POR.

Dongbu's Case Br. at 2, 7, PD 129 (Nov. 8, 2013); Union Steel's Case Br. at 2–3, PD 130

(Nov. 8, 2013).  See also Mot. Pl. Dongbu Supp. Mot. J. 7, Oct. 2, 2014, ECF No. 27-1

("Pl.'s Mot.");  Br. Pl. Union Steel Supp. Mot. J. Agency R 7, Oct. 2, 2014, ECF No. 28-1.[5]

Plaintiffs also argued that Commerce unlawfully used costs beyond the POR and those

costs do not reasonably reflect the actual costs during the POR.  Dongbu's Case Br. at

---

sold) before the date of importation by the producer or exporter of the subject
merchandise outside of the United States," 19 U.S.C. § 1677a(a), and constructed export
price is "the price at which the subject merchandise is first sold (or agreed to be sold) in
the United States before or after the date of importation by or for the account of the
producer or exporter of such merchandise . . . ."  19 U.S.C. § 1677a(b).

[5] Union Steel's motion for judgment on the agency record closely mirrors Dongbu's motion
for judgment on the agency record.  Therefore, the court will cite only Dongbu's motion,
the mandatory respondent below, unless otherwise necessary.

8–9.  See also Pl.'s Mot 18.  Plaintiffs argued Commerce should have requested new cost

data for the revised POR and should recalculate the dumping margin.  Dongbu's Case

Br. at 7; Union Steel's Case Br. at 2–3.  See also Pl.'s Mot. 7.  In the Final Results,

Commerce dismissed Plaintiffs' arguments, finding instead that "the use of the 12-month

average cost data [wa]s reasonable and appropriate in this situation."  IDM at cmt. 1.

Plaintiffs now challenge Commerce's determination to use the 12-month cost of

production data instead of using cost data that reflects the shortened POR.  Plaintiffs

argue the language of the cost recovery test in 19 U.S.C. § 1677b(b)(2)(D) is mandatory

and requires Commerce to measure the prices of the below cost sales against the

weighted average cost of production for the POR. Moreover, Plaintiffs argue that

Commerce was statutorily obligated "to compare home market sales for the POR to costs

for that same POR in its sales below cost test."  Pl.'s Mot. 21.

## JURISDICTION AND STANDARD OF REVIEW

The court has jurisdiction pursuant to 28 U.S.C. § 1581(c), and 19 U.S.C.

§ 1516a(a).  "The court shall hold unlawful any determination, finding, or conclusion found

. . . to be unsupported by substantial evidence on the record, or otherwise not in

accordance with law . . . ."  19 U.S.C. § 1516a(b)(1)(B)(i).

## DISCUSSION

## Cost Recovery

Plaintiffs argue Commerce's cost recovery determination violated the plain

language of 19 U.S.C. § 1677b(b)(2)(D) because Commerce used a weighted average

cost of production based on costs incurred outside the revised POR ending on February

14, 2012.  Defendant argues that despite the language of § 1677b(b)(2)(D), Commerce's

interpretation of the statute should govern because it "is based on a reasonable

interpretation of a statutory provision in light of this case's highly unusual facts."  Def.'s

Opp'n Pls.' Mots. J. Agency R. 6, Jan. 29, 2015, ECF No. 39 ("Def.'s Opp'n").  In effect,

Defendant argues that because the statute does not specifically contemplate the precise

factual scenario here, the statutory language requiring the weighted average cost of

production to be calculated for the POR does not apply.

The question before the court involves the cost recovery test, which provides:

> If prices which are below the per unit cost of production at the time of sale
> are above the weighted average per unit cost of production for the period of
> investigation or review, such prices shall be considered to provide for
> recovery of costs within a reasonable period of time.

19 U.S.C. § 1677b(b)(2)(D).   The precise question here is whether Congress

unambiguously prohibited Commerce from using a period other than the POR to calculate

the weighted average cost of production to determine which prices provide for cost

recovery over a reasonable time.  In other words, may Commerce interpret the phrase

"for the period of investigation or review" to mean something other than the actual period

of investigation or review in a given case.  The court finds that, as a matter of law, the

language of the cost recovery test in § 1677b(b)(2)(D) does not afford Commerce the

discretion to ignore the POR.

This case involves a question of statutory interpretation.  "[T]he 'starting point in

every case involving construction of a statute is the language itself.'"  United States v.

Hohri, 482 U.S. 64, 69 (1987) (quoting Kelly v. Robinson, 479 U.S. 36, 43 (1986)).

"Absent a clearly expressed legislative intention to the contrary, [the] language [of the statute] must ordinarily be regarded as conclusive."  Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc., 447 U.S. 102, 108 (1980).  "[A]lthough agencies are generally entitled to deference in the interpretation of statutes that they administer, a reviewing 'court, as well as the agency, must give effect to the unambiguously expressed intent of Congress.'" Food and Drug Admin. v. Brown & Williamson Tobacco Corp., 529 U.S. 120, 125–26 (1999) (citing Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 842–43 (1984)).

In order for Commerce to disregard below cost sales, Commerce must make three findings.  The statute requires Commerce to determine whether 1) sales of the foreign like product were made below the cost of production of that product,[6] 2) the below cost sales were made within an extended period of time and in substantial quantities,[7] and 3)

---

[6] Commerce determines whether there are reasonable grounds to believe or suspect that there are below cost sales of the foreign like product.  After establishing reasonable grounds to investigate below cost sales, Commerce calculates the cost of production. See, e.g., Certain Cold-Rolled Flat-Rolled Carbon-Quality Steel Products From Brazil, 65 Fed. Reg. 5554, 5563 (Dep't Commerce Feb. 4, 2000) (notice of final determination of sales at less than fair value).

[7] An extended period of time is statutorily defined in § 1677b(b)(2)(B) as "a period that is normally 1 year, but not less than 6 months."  19 U.S.C. § 1677b(b)(2)(B).  "Substantial quantities" is defined in § 1677b(b)(2)(C), which provides that

> [s]ales made at prices below the cost of production have been made in substantial quantities if--

> (i) the volume of such sales represents 20 percent or more of the volume of sales under consideration for the determination of normal value, or

(footnote continued)

the below cost sales were not made at prices which permit the recovery of all costs within

a reasonable period of time.  The statute provides that if Commerce determines it has

> reasonable grounds to believe or suspect that sales of the foreign like
> product under consideration for the determination of normal value have
> been made at prices which represent less than the cost of production of that
> product, [Commerce] shall determine whether, in fact, such sales were
> made at less than the cost of production. If [Commerce] determines that
> sales made at less than the cost of production--
>> (A) have been made within an extended period of time in substantial
>> quantities, and
>> (B) were not at prices which permit recovery of all costs within a
>> reasonable period of time,
>> such sales may be disregarded in the determination of normal value.
>> Whenever such sales are disregarded, normal value shall be based on
>> the remaining sales of the foreign like product in the ordinary course of
>> trade. If no sales made in the ordinary course of trade remain, the normal
>> value shall be based on the constructed value of the merchandise.

19 U.S.C. § 1677b(b)(1).

Congress explicitly defined when sales provide for recovery of costs over a

reasonable period of time in the cost recovery test:

> If prices which are below the per unit cost of production at the time of sale
> are above the weighted average per unit cost of production for the period of
> investigation or review, such prices shall be considered to provide for
> recovery of costs within a reasonable period of time.

19 U.S.C. § 1677b(b)(2)(D).[8]  Prices below the per unit cost of production but above the

weighted average cost of production for the period of review provide "for recovery of costs

---

> (ii) the weighted average per unit price of the sales under consideration for
> the determination of normal value is less than the weighted average per unit
> cost of production for such sales.

19 U.S.C. § 1677b(b)(2)(C)(i)–(ii).

[8] There is a slight difference in the wording of 19 U.S.C. § 1677b(b)(1)(B) and 19 U.S.C

(footnote continued)

within a reasonable period of time . . . ."   19 U.S.C. § 1677b(b)(2)(D).   Thus,

§ 1677b(b)(2)(D) identifies a floor created by the weighted average cost of production for

the POR and § 1677b(b)(1) precludes Commerce from excluding below cost sales which

are above the floor from the normal value calculation.[9]

The court finds that Congress unambiguously prohibited Commerce from using

cost data for a period other than the POR to calculate the weighted average cost of

production for purposes of the cost recovery test.   The statute explicitly directs Commerce

to compare "prices which are below the per unit cost of production at the time of sale,"

with "the weighted average per unit cost of production for the period of investigation or

review . . . ."  19 U.S.C. § 1677b(b)(2)(D).  The language identifies a particular time frame,

"for the period of investigation or review."   There is no ambiguity in the phrase "for the

period of . . . review."   The phrase "for the period of investigation or review" can only mean

the actual period of review established for the review.   Whether any other part of the cost

recovery test may contain an ambiguity is not before the court.   The subsection does not

include any words that would connote a grant of discretion to Commerce to expand the

---

§ 1677b(b)(2)(D) with respect to the recovery of costs.   Section 1677b(b)(1)(B) asks
Commerce to determine if sales "were not at prices which permit recovery of all costs
within a reasonable period of time."  19 U.S.C. § 1677b(b)(1)(B) (emphasis added).   The
cost recovery test of 19 U.S.C. § 1677b(b)(2)(D) does not say "all costs."  Instead it says:

> If prices which are below the per unit cost of production at the time of sale
> are above the weighted average per unit cost of production for the period of
> investigation or review, such prices shall be considered to provide for
> recovery of costs within a reasonable period of time.

19 U.S.C. § 1677b(b)(2)(D) (emphasis added).   Neither party has argued that this
difference has any effect on the issue before the court.

[9] If below cost sales were made at prices below the floor, Commerce has discretion to
exclude them from the normal value calculation.

period from which costs can be calculated.   Congress could have chosen words that

afforded Commerce greater discretion.   It did not.

Nothing in the statutory framework contradicts the cost recovery test's plain

language regarding the POR.   The statute contemplates two distinct inquiries for below

cost sales and cost recovery.   In the below cost sales inquiry, the statute instructs

Commerce to compare sales prices for the foreign like product under consideration for

normal value to the cost of production.   The cost of production is

> an amount equal to the sum of--
> (A) the cost of materials and of fabrication or other processing of any kind
> employed in producing the foreign like product, during a period which would
> ordinarily permit the production of that foreign like product in the ordinary
> course of business;
> (B) an amount for [SG&A] based on actual data pertaining to production and
> sales of the foreign like product by the exporter in question; and
> (C) the cost of all containers and coverings of whatever nature, and all other
> expenses incidental to placing the foreign like product in condition packed
> ready for shipment.

19 U.S.C § 1677b(b)(3)(A)–(C).   Commerce has some discretion in determining what cost

information to use to calculate the cost of production, but it must come from "a period

which would ordinarily permit the production of that foreign like product in the ordinary

course of business . . . ."   19 U.S.C. § 1677b(b)(3)(A); see also Thai Pineapple Canning

Indus. Corp. v. United States, 273 F.3d 1077, 1084 (Fed. Cir. 2001) (explaining that the

statutory language in § 1677b(b)(3) and § 1677b(e) does not "specify[] the period to be

used when determining costs, and no other statute or regulation provides further

guidance.").   Certain facts may require Commerce to make certain adjustments to the

cost reporting period.   See Thai Pineapple, 273 F.3d at 1085.

In the cost recovery inquiry, Commerce compares the sales prices of the foreign like product under consideration for normal value to the "weighted average per unit cost of production for the period of investigation or review . . . ."  19 U.S.C. § 1677b(b)(2)(D). This provision stands in contradistinction to the cost of production, calculated in accordance with 19 U.S.C. § 1677b(b)(3), that is to be compared to normal value in the below cost sales test.   Section 1677b(b)(3)(A) provides for the cost of production calculation to include the costs for producing the "foreign like product, during a period which would ordinarily permit the production of that foreign like product in the ordinary course of business . . . ."[10]   Likewise, the special rules for the calculation of cost of production provide that:

> Costs shall normally be calculated based on the records of the exporter or producer of the merchandise, if such records are kept in accordance with the generally accepted accounting principles of the exporting country (or the producing country, where appropriate) and reasonably reflect the costs associated with the production and sale of the merchandise. The administering authority shall consider all available evidence on the proper allocation of costs, including that which is made available by the exporter or producer on a timely basis, if such allocations have been historically used by the exporter or producer, in particular for establishing appropriate amortization and depreciation periods, and allowances for capital expenditures and other development costs.

19 U.S.C. § 1677b(f)(1)(A).   Thus, the statutory scheme provides for two separate inquiries—a cost of production inquiry for below cost sales, and the weighted average

---

[10] The language in subsections (B) (i.e., "pertaining to the production and sales of the foreign like product") and (C) ("other expenses incidental to placing the foreign like product in condition packed ready for shipment") also confer discretion on Commerce. See 19 U.S.C § 1677b(b)(3)(B)–(C).

cost of production for the POR in the cost recovery test.[11]   The language of the former

provision provides discretion to Commerce, while the latter does not.

Moreover, the legislative history for the cost recovery test does not undermine the

plain language of 19 U.S.C. § 1677b(b)(2)(D).   Congress made it clear that for the cost

recovery test, as opposed to below cost sales analysis, it would limit Commerce's

discretion to choose a time period.    As Congress explained in the Statement of

Administrative Action ("SAA"),

> new section [1677b(b)(2)(D)] specifies when particular prices provide for
> cost recovery within a reasonable period of time.  Under current law, there
> is no clear definition of cost recovery — the measure of cost recovery could
> have been based on speculative estimates of future production costs.
> Under the amended law, if prices which are below costs at the time of sale
> are above weighted-average costs for the period of investigation or review,
> such prices shall be considered to provide for recovery of costs within a
> reasonable period of time.

Uruguay Round Agreements Act, Statement of Administrative Action, H.R. Doc. No. 103-

316, vol. 1, at 832 (1994), reprinted in 1994 U.S.C.C.A.N. 4040, 4170 ("SAA").   This

---

[11] Specifically, 19 U.S.C. § 1677b(b)(1) provides Commerce with discretion to disregard
sales made at below the cost of production and 19 U.S.C. § 1677b(b)(2)(D) provides for
the cost recovery test.   While Congress provided separately for these inquiries,
Commerce as a matter of policy chooses to employ the same initial methodology for both.
See IDM at cmt. 1 ("In a normal case, we calculate the COP in the same way for use in
the sales-below-cost and cost-recovery tests, based on the annual weighted-average cost
during the POI or POR.")   So long as that methodology falls within the permissible
statutory framework, Commerce is free to adopt such a policy.  In other words, Commerce
has the discretion to calculate costs based on the annual weighted average cost during
the POI or POR.   However, it is required to calculate costs for purposes of the cost
recovery test based on the annual weighted average cost during the POI or POR.  If it
exercises its discretion to deviate from this methodology for purposes of its below cost
sales analysis, it is not excused from its obligation to use the POR for cost recovery
purposes.

statement demonstrates that Congress contemplated, but rejected, the notion that cost recovery could be measured with reference to any period other than the POR.

Defendant makes several arguments, none of which persuades the court to ignore the plain meaning of the statute.  First, Defendant argues that the cost recovery test is ambiguous due to the unusual facts here, and therefore the court should accept its reasonable interpretation of the statute.  Def.'s Opp'n 16.   As the court held above, the cost recovery test is not ambiguous but requires Commerce to calculate the weighted average cost of production for the POR.  The plain language of the cost recovery test does not contemplate any particular factual scenario.  It merely defines when Commerce must find that below cost prices allow for recovery of costs within a reasonable period of time.  Commerce does not acquire discretion to sidestep the POR in the cost recovery test simply because the cost recovery test does not specifically provide for the situation where a POR changes.  Moreover, Defendant's argument proves too much.  If a statute became ambiguous simply because it was applied to a unique set of facts, there could be no unambiguous statutes.

In addition, Defendant argues that other provisions of the antidumping and countervailing duty statute, as well as the SAA, suggest the POR language in the cost recovery test is ambiguous.  Defendant claims 19 U.S.C. § 1675(a) suggests the POR should be 12 months and that therefore, the cost recovery test's reference to "the POR" should be interpreted to mean the "12 month POR."   However, the antidumping and countervailing duty statute does not define the length of the POR as 12 months.  It provides that at least once during any 12 month period, if Commerce receives a request

for review of an order, it must initiate a review.[12]  See 19 U.S.C. § 1675(a).  Commerce's

regulations in 19 C.F.R. § 351.213(e) state that normally the POR will be 12 months.  The

regulations temper Commerce's discretion to set the length of the POR in each case, but

Commerce must use that POR consistently throughout the review.

As indicated, Defendant claims that ambiguity stems from the unusual

circumstances of this case.  Def.'s Opp'n 6.  Putting aside the illogic of this assertion, 19

U.S.C. § 1675(c), 19 C.F.R. § 351.218(c)(2), and 19 C.F.R. § 351.222(i)(2)(i) clearly

envision the situation where the effective date for revocation in a sunset review does not

coincide with the POR for the annual administrative review.  By regulation, an annual

administrative review and the POR it covers are determined according to the anniversary

---

[12] The statute provides that

> [a]t least once during each 12-month period beginning on the anniversary of the date of publication of a countervailing duty order under this subtitle or under section 1303 of this title, an antidumping duty order under this subtitle or a finding under the Antidumping Act, 1921, or a notice of the suspension of an investigation, the administering authority, if a request for such a review has been received and after publication of notice of such review in the Federal Register, shall--
>
>> (A) review and determine the amount of any net countervailable subsidy,
>>
>> (B) review, and determine (in accordance with paragraph (2)), the amount of any antidumping duty, and
>>
>> (C) review the current status of, and compliance with, any agreement by reason of which an investigation was suspended, and review the amount of any net countervailable subsidy or dumping margin involved in the agreement,
>
> and shall publish in the Federal Register the results of such review, together with notice of any duty to be assessed, estimated duty to be deposited, or investigation to be resumed.

19 U.S.C. § 1675(a).

month of the date of publication of the antidumping or countervailing duty order.  See 19

C.F.R. § 351.213(b), (e).  Normally, the POR covers the 12 months immediately prior to

the anniversary month.  19 C.F.R. § 351.213(e).  The later an order is published in the

month, the more time there is between the last day of the POR and the publication date

of the order.  If as a result of the first sunset review, either Commerce or the ITC decides

to revoke the order, the revocation will be effective on the five year anniversary date of

the order.  See 19 C.F.R. § 351.222(i)(2)(i).  If the first sunset review does not revoke the

order, the effective date of revocation for all subsequent sunset reviews will not be the

anniversary date of the order.  Rather, the revocation date for subsequent sunset reviews

will be the date that the prior sunset review ordered continuation of the order.  19 C.F.R.

§ 351.222(i)(2)(i).[13]  Therefore, if the original order is published any day after the first of

the month, and the first sunset review revokes the order, the POR in an annual

administrative review would still differ from the date of revocation by at least one day.  In

addition, both Commerce and the ITC may expedite the sunset review, making the review

period less than 360 days, or extend the review beyond 360 days, altering the publication

date for the sunset review's determination to continue the order.  See 19 U.S.C.

§ 1675(c)(3), (5)(B); 19 C.F.R. § 351.218(e)(1), (e)(2)(i).  Therefore, it is not only

foreseeable, but more than likely that revocation as a result of a sunset review will be

effective on a date other than the anniversary date of the order.  As a result, a gap in the

---

[13] Pursuant to Commerce's regulations, in a decision to revoke an order made pursuant to a sunset review, "the revocation or termination will be effective on the fifth anniversary of the date of publication in the Federal Register of the order or suspended investigation, as applicable."  19 C.F.R. § 351.222(i)(2)(i).

date of the revocation order and the POR in the annual administrative review is to be expected.  Commerce might infrequently need to apply the cost recovery test in a situation where the POR has changed because there has been a revocation.  However, it cannot be the case that the occurrence of a circumstance foreseeable by virtue of the statute and the regulations would render otherwise clear statutory language ambiguous.

As a related matter, Defendant's claim that its interpretation of the cost recovery test is reasonable also fails.  As the court has already held, the cost recovery test is not ambiguous.  It requires the weighted average cost of production to be calculated for the POR.  Therefore, Defendant's argument that the decision to use costs of production from outside the POR was a reasonable interpretation of the cost recovery test because "Commerce found that '[a]n annual-average cost period provides a better, more accurate measure'" of the costs for Plaintiffs' sales is of no moment.  Def.'s Opp'n 15 (quoting IDM at cmt. 1); see also Def.-Intervenor Nucor Corp.'s Resp. Pls.' Briefs 11, Jan. 29, 2015, ECF No. 38 ("Nucor's Resp.").  Similarly, whether or not Commerce has previously used costs of production from outside the POR in its cost recovery analysis does not establish its legal authority to refuse to follow the plain language of the statute.[14]  The administrative

---

[14] Defendant claims that it has previously calculated the costs of production using costs from outside the POR in the administrative review of certain cold-rolled and corrosion-resistant carbon steel flat products from Korea.  See Def.'s Opp'n 17 (citing Certain Cold-Rolled and Corrosion-Resistant Carbon Steel Flat Products From the Republic of Korea, 66 Fed. Reg. 47,163 (Dep't of Commerce Sept. 11, 2001) (notice of preliminary results of antidumping duty administrative review)).  Originally, the POR in that case was from August 1, 1999 through July 31, 2000.  Commerce revoked the antidumping duty order for cold-rolled carbon steel products as of January 1, 2000.  Therefore, Commerce

(footnote continued)

determinations cited by Defendant are not currently before the court and do not control the court's determination that the language of the cost recovery test is clear on its face.

Defendant also argues the SAA indicates the cost recovery test is a flexible provision.  Defendant notes that the SAA provides an exception for adjusting the costs of production.  Def.'s Opp'n 14.  However, as Defendant itself admits, the exception for when Commerce may make any adjustment to costs is to be made "before testing for cost recovery."  Id. at 14 (quoting SAA at 832, 1994 U.S.C.C.A.N. at 4170) (internal quotation marks omitted).  Any flexibility provided by this exception specifically occurs before the application of the cost recovery test.

**Below Cost Sales**

Plaintiffs argue that the use of costs outside the POR is unlawful as a general matter because Commerce is required to use costs of production that "reasonably reflect the costs associated with the production and sale of the merchandise, during the period of review," and that those costs must be the costs for the POR.  Pl.'s Mot. 18–19.  Plaintiffs argue that there is "no legal basis for Commerce to utilize cost information for the five and a half months after revocation for testing whether sales made during the POR can be used as normal value for price comparison purposes."  Id. at 18.  Defendant argues that

---

shortened the POR for cold-rolled carbon steel products to August 1, 1999 through December 31, 1999.  However, the cost data outside the POR was from July 1999, which was never included in the POR either before or after revocation.  Furthermore, the parties there did not contest the use of the cost data from the month prior to the POR.  See Certain Cold-Rolled and Corrosion-Resistant Carbon Steel Flat Products From Korea, 67 Fed. Reg. 11,976 (Dep't Commerce Mar. 18, 2002) (notice of final results of antidumping duty administrative reviews).

Commerce acted reasonably when it "rejected using shorter period data because 'the shorter averaging period may reflect erratic production levels throughout the year, and improperly result in the exclusion of certain expenses only recorded sporadically during the year.'"  Def.'s Opp'n 20 (quoting IDM at cmt. 1).  Plaintiffs see this as a question of whether the statute unambiguously prohibits Commerce from using cost data for five and a half months outside of the POR, while Defendant sees this as a question of reasonableness.  The court agrees with Defendant that 19 U.S.C. § 1677b(b)(1) grants Commerce the discretion to include costs outside of the POR in calculating the cost of production for its below cost sales analysis.  However, the court finds Commerce's explanation as to why it was reasonable on the facts of this case to use costs incurred five and a half months after the POR had ended, inadequate.

Congress has provided Commerce with discretion in calculating the cost of production.  As discussed above, Commerce must use costs for "a period which would ordinarily permit the production of that foreign like product in the ordinary course of business . . . ."  19 U.S.C. § 1677b(b)(3)(A).  Further, Commerce is instructed to calculate costs based upon the exporter's or producer's records where those records "reasonably reflect the costs associated with the production and sale of the merchandise."  19 U.S.C. § 1677b(f)(1)(A).  This language affords Commerce significant discretion to choose what cost reporting period to use.[15]  The language is broad enough to afford Commerce the

---

[15]  Defendant-Intervenor argues that 19 U.S.C. § 1677b(f)(1)(A) and 19 U.S.C. § 1677b(b)(1) fail to support Plaintiffs' position because the provisions only "involve the
(footnote continued)

discretion to use costs outside of the POR, possibly even up to five and a half months

outside the POR.

> As the Defendant points out, the SAA further provides:

> Costs shall be allocated using a method that reasonably reflects and accurately captures all of the actual costs incurred in producing and selling the product under investigation or review.  In determining whether to accept the cost allocation methods proposed by a specific producer, Commerce will consider the production cost information available to the producer and whether such information could reasonably be used to compute a representative measure of the materials, labor and other costs, including financing costs, incurred to produce the subject merchandise, or the foreign like product.

Def.'s Opp'n 21–22 (quoting SAA at 835, 1994 U.S.C.C.A.N. at 4172).   Under this

language, when Commerce evaluates a company's records to calculate the cost of

production it must determine if the method used "reasonably reflects and accurately

captures all of the actual costs incurred in producing and selling the product under

investigation or review."   It is not implausible that in certain situations, costs incurred

outside the POR might reasonably reflect and accurately capture the actual costs incurred

for the merchandise sold during the POR.

> However, Commerce must explain its decision in this case that the costs incurred

after the POR reasonably reflect the costs of the product under review.   Although

Commerce's explanation does not have to be a model of clarity the court must be able to

---

manner in which costs should be calculated and whether to disregard sales from normal value," and do not address the question of the cost reporting period.  Nucor's Resp. 12. These provisions do implicate Commerce's obligations regarding the cost reporting period because they cabin Commerce's discretion for how to calculate the cost of production in the below cost sales test.

discern why Commerce believed that costs outside the POR "reasonably reflect the costs associated with the production and sale of the merchandise." 19 U.S.C. § 1677b(f)(1)(A). It is not enough for Commerce to summarily conclude that "there is no reason to believe that the annual-average cost data is unsuitable or otherwise unrepresentative . . . ." Def.'s Opp'n 22 (quoting IDM at cmt. 1) (internal quotation marks omitted).  Nor is it sufficient for Defendant to argue that Plaintiffs failed to show how Commerce's choice led to any distortion. Id. at 23 (citations omitted).  The explanation cannot simply provide any reason as to why Commerce would prefer to use this data.  Commerce must explain why, in light of the statute, it decided to use this data.  The statute grants Commerce the discretion to calculate costs "during a period which would ordinarily permit the production of that foreign like product in the ordinary course of business," 19 U.S.C. § 1677b(b)(3)(A), and to rely upon records that "reasonably reflect the costs associated with the production and sale of the merchandise." 19 U.S.C. § 1677b(f)(1)(A).  Commerce must explain how the costs used reasonably reflect the costs for the merchandise under consideration in its determination of normal value.

Defendant argues that nothing mandates that Commerce "must use data specifically pegged to the review period . . . ." Def.'s Opp'n 22 (citation omitted).  While the statute affords Commerce discretion to use cost of production data from outside the POR, Commerce must still provide an adequate explanation for its decision.  As discussed above, that Defendant cites other instances in which Commerce has used costs from outside the POR does not establish the reasonableness of its decision to do so in this case.

**Administrative Burden**

Finally, Defendant contends Plaintiffs raised arguments regarding the cost data for cost recovery and below cost sales analysis too late in the administrative proceeding. Defendant argues "even if Commerce had agreed with plaintiffs' position, Commerce could not reopen the record because doing so would have impeded its ability to complete the administrative review within the statutorily prescribed deadline." Id. at 28.[16]  As discussed above, the cost recovery test requires Commerce to collect the cost data for the POR.   A clear and unambiguous statute does not give way to administrative constraints.  Therefore, it is not a matter of whether the administrative burden reasonably outweighed the decision to comply with Plaintiffs' request.   Commerce was required to follow the statute.  It may not disregard the statute simply because to do so would create administrative costs. While Commerce has discretion as to how it calculates the cost of production for below cost sales, it must explain the reasonableness of its decision, however it chooses to proceed in light of the data it collects.

---

[16] In the Issues and Decision Memorandum for the Final Results, Commerce stated that if it had agreed with Plaintiffs, it would have had to

> (1) require both respondents to report entirely new product-specific cost files, (2) analyze the revised cost data, (3) issue supplemental questionnaires seeking additional clarification of the newly reported information (if needed), (4) allow a new round of case and rebuttal briefs on the new data, and (5) address all comments contained in the newly filed case and rebuttal briefs prior to issuing our final results.

IDM at cmt 1.

## CONCLUSION

In accordance with the foregoing, it is hereby

**ORDERED** that Commerce's determination is remanded for further consideration consistent with this opinion; and it is further

**ORDERED** that Commerce shall issue a remand determination that is supported by substantial record evidence and is in accordance with law; and it is further

**ORDERED** that Commerce may reopen the record to collect any information that may be necessary to make its determination upon remand; and it is further

**ORDERED** that Commerce shall file its remand determination with the court within 60 days of this date; and it is further,

**ORDERED** that Plaintiff shall have 30 days thereafter to file objections; and it is further,

**ORDERED** that Defendant and Defendant-Intervenor shall have 15 days thereafter to file responses.


                                                    /s/ Claire R. Kelly
                                                  Claire R. Kelly, Judge


Dated:  May 5, 2015
          New York, New York